# United States District Court

<u>     CENTRAL     </u> DISTRICT OF <u>          CALIFORNIA          </u>

**In the Matter of the Seizure of**
(Address or Brief description of property or premises to be seized)

UP TO $150,000.00 ON DEPOSIT IN CITIBANK, N.A.
CHECKING ACCOUNT NUMBER 207559840, HELD IN THE
NAME OF EDEIN LLC.

**APPLICATION AND AFFIDAVIT FOR A SEIZURE WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS**

**CASE NO:  2:21-MJ-02433**

I,  **Mousa N. Rahib**, being duly sworn depose and say:

I am a Special Agent with the <u>**INTERNAL REVENUE SERVICE, Criminal Investigation**</u>, and have reason to believe that in the <u>     CENTRAL     </u> District of <u>          CALIFORNIA          </u>
there is now concealed a certain person or property, namely (describe the person or property to be seized)

**which is** (state one or more bases for seizure under United States Code)

subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(b) and 18 U.S.C. § 981 (a)(1)(C),

**concerning a violation of Title** <u>18</u> **United States Code, Section(s)** § 1343 (Wire Fraud), § 1344 (Bank Fraud), § 1349 (Conspiracy to Commit Wire and Bank Fraud), and § 1014 (False Statements to a Financial Institution).  There is also probable cause to believe that the subject funds represent or are traceable to proceeds of one or more violations of 18 U.S.C. § 1956(a) and (h) (Money Laundering and Conspiracy to Commit Money Laundering), providing a separate basis for seizure of the subject funds pursuant to 18 U.S.C. § 981(b), and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

**The facts to support a finding of Probable Cause for issuance of a Seizure Warrant are as follows:**
**Continued on the attached sheet and made a part hereof.**   <u>X</u> Yes __ No

**Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone**

**Sworn to before me in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone**

Los Angeles, California
**City and State**

_____
**Date**

_____
**Signature of Judicial Officer**

**Hon. Margo A. Rocconi, U. S. Magistrate Judge**
**Name and Title of Judicial Officer**

AUSA James E. Dochterman:lc

**AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANTS**

I.   **INTRODUCTION**

I, Mousa N. Rahib, being duly sworn, declare as follows:

1.   I am a Special Agent ("SA") with the Internal Revenue Service – Criminal Investigation ("IRS-CI") in the Los Angeles Field Office and have been so employed since March 2002.  As part of my training as an SA, I attended the Federal Law Enforcement Training Center in Glynco, Georgia, where I received training in criminal and financial investigative techniques with an emphasis in accounting and criminal tax law.  My training included courses in law enforcement techniques, federal criminal statutes, criminal investigations, execution of search warrants, financial investigative techniques, and legal principles and statutes representing criminal violations of the United States Code as enumerated in Titles 18, 26, and 31.  Prior to becoming a Special Agent, I received a Finance degree in 2000 from San Diego State University.  I have personally conducted and assisted in investigations of criminal violations of the Internal Revenue Laws, Bank Secrecy Act, Money Laundering Control Act, identity theft, and wire and mail fraud.  These investigations have involved the use of physical surveillance; the use of

cooperating witnesses; undercover operations; and the preparation and execution of search and arrest warrants.

2.   The facts set forth in this affidavit are based on personal knowledge I gained from my participation in this investigation, my training and experience, documents and records that were collected and reviewed in the course of this investigation, information that was obtained from interviewed witnesses, and information gathered by other law enforcement officers.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrants and does not purport to set forth all of my knowledge of the investigation into this matter.  Unless specifically indicated otherwise, all conversations and statements described in this affidavit are related in substance and in part only.

## II.   **PURPOSE OF AFFIDAVIT**

3.   This affidavit is made in support of an application for warrants to seize the following funds on deposit in the following bank accounts (collectively referred to as the "SUBJECT ACCOUNTS"):

a. Up to $130,000.00 on deposit in Bank of America ("BofA") checking account number 325137387973, held in the name of Hand&Hand Inc ("Hand&Hand-BofA Acct. x7973");

b. Up to $150,000.00 on deposit in BofA checking account number 325113400227, held in the name of Musgrow Organization LLC ("Musgrow Org.-BofA Acct. x0227");

c. Up to $137,000.00 on deposit in BofA checking account number 325113400586, held in the name of Mystic Wolff LLC ("Mystic-BofA Acct. x0586"); and

d. Up to $150,000.00 on deposit in Citibank ("Citi") checking account number 207559840, held in the name of Edein LLC ("Edein-Citibank Acct. x9840"), (collectively referred to as the "SUBJECT FUNDS" or the "SUBJECT ACCOUNTS").

4.   The SUBJECT FUNDS are subject to seizure pursuant to 18 U.S.C. § 981(b), and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), because there is probable cause to believe that the SUBJECT FUNDS constitute or were derived from proceeds traceable to one or more violations of 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1344 (Bank Fraud), 18 U.S.C. § 1349 (Conspiracy to Commit Wire and Bank Fraud), and 18 U.S.C. § 1014 (False Statements to a Financial Institution), all of which are specified unlawful activities as defined in 18 U.S.C. § 1956(c)(7).  There is also probable cause to believe that the SUBJECT FUNDS constitute or were derived from proceeds traceable to one or more violations of 18 U.S.C. § 1956(a) and (h) (Money

Laundering and Conspiracy to Commit Money Laundering),
providing a separate basis for seizure of the SUBJECT FUNDS
pursuant to 18 U.S.C. § 981(b), and forfeiture pursuant to
18 U.S.C. § 981(a)(1)(A).  Specifically, probable cause
exists that the SUBJECT FUNDS represent proceeds from a
fraud scheme by which WILLIAM MUSGROW ("MUSGROW"), and
others known and unknown, knowingly submitted or caused
others to submit fraudulent loan applications to various
lenders, including federally insured financial
institutions, and the Small Business Administration
("SBA"), in an attempt to obtain funds authorized by the
Coronavirus Aid, Relief, and Economic Security ("CARES")
Act.  Based on these fraudulent loan applications, funds
were then wired to numerous accounts and deposited, either
directly or indirectly through transfers, into the SUBJECT
ACCOUNTS.

     5.   To the extent that the SUBJECT FUNDS are not the
actual monies traceable to or involved in the illegal
activities identified herein, there is probable cause to
believe that said funds are identical property found in the
same account(s) as the property involved in the illegal
activities, rendering them subject to forfeiture pursuant
to 18 U.S.C. § 984.

6.    In addition, the SUBJECT FUNDS are subject to
seizure and forfeiture to the United States pursuant to 18
U.S.C. § 982(a)(7) and (b)(1), and 21 U.S.C. § 853(f),
because there is probable cause to believe that the SUBJECT
FUNDS would, in the event of conviction on the alleged
underlying wire fraud, bank fraud, and money laundering
offenses, be subject to criminal forfeiture, and an order
under 21 U.S.C. § 853(e) (providing for restraining orders
and injunctions) would not be sufficient to assure the
availability of the property for forfeiture.

III.  **BACKGROUND**

7.    Based on my training and experience, review of
publicly available information, and discussions with other
law enforcement agents, I have learned the following
regarding the loans at issue.

A.    **THE PAYCHECK PROTECTION PROGRAM ("PPP")**

8.    The CARES Act is a federal law enacted in or
around March 2020 and designed to provide emergency
financial assistance to the millions of Americans who are
suffering the economic effects caused by the COVID-19
pandemic.  One source of relief provided by the CARES Act
was the authorization of up to $349 billion in forgivable
loans to small businesses for job retention and certain
other expenses, through a program referred to as the PPP.

In or around April 2020, Congress authorized over $300
billion in additional PPP funding, and in December 2020,
Congress authorized another $294 billion in additional
funding.

9.   In order to obtain a PPP loan, a qualifying
business must submit a PPP loan application, signed by an
authorized representative of the business.  The PPP loan
application requires the business (through its authorized
representative) to acknowledge the program rules and make
certain affirmative certifications in order to be eligible
to obtain the PPP loan.  In the PPP loan application, the
small business (through its authorized representative) must
state, among other things, its: (a) average monthly payroll
expenses; and (b) number of employees.  These figures are
used to calculate the amount of money the small business is
eligible to receive under the PPP.  In addition, businesses
applying for a PPP loan must provide documentation showing
their payroll expenses.

10.  A PPP loan application must be processed by a
participating lender.  Data from the application, including
information about the borrower, the total amount of the
loan, and the listed number of employees, is transmitted by
the lender to the SBA in the course of processing the loan.
Specifically, the lenders enter the PPP application

information into the SBA E-Tran system.  The E-Tran

computer server is located in Herndon, Virginia.  If a PPP

loan application is approved, the participating lender

funds the PPP loan using its own monies, which are 100%

guaranteed by the SBA.  The SBA is a United States

government agency based in Washington, D.C.

11.  PPP loan proceeds must be used by the business on

certain permissible expenses, *e.g.*, payroll costs, interest

on mortgages, rent, and utilities.  The PPP allows the

interest and principal on the PPP loan to be entirely

forgiven if the business spends the loan proceeds on these

expense items within a designated period of time after

receiving the proceeds and uses a certain amount of the PPP

loan proceeds on payroll expenses.

B.    **THE ECONOMIC INJURY DISASTER LOAN ("EIDL") PROGRAM**

12.  The EIDL program is an SBA program that provides

low-interest financing to small businesses, renters, and

homeowners in regions affected by declared disasters.

13.  The CARES Act authorized the SBA to provide EIDLs

of up to $2 million to eligible small businesses

experiencing substantial financial disruption due to the

COVID-19 pandemic.  In addition, the CARES Act authorized

the SBA to issue advances of up to $10,000 to small

businesses within three days of applying for an EIDL.  The

amount of the advance is determined by the number of employees the applicant certifies having.  The advances do not have to be repaid.

14.  In order to obtain an EIDL and advance, a qualifying business must submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster.  In the case of EIDLs for COVID-19 relief, the 12-month period was that preceding January 31, 2020.  The applicant must also certify that all of the information in the application is true and correct to the best of the applicant's knowledge.

15.  EIDL applications are submitted directly to the SBA and processed by the agency with support from a government contractor.  SBA determines whether to approve the loan, and in what amount, based in part on the information provided by the application about employment, revenue, and cost of goods sold, as described above.  Any funds issued under an EIDL or advance are issued directly by the SBA.  EIDL funds can be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.  If the

applicant also obtains a loan under the PPP, the EIDL funds cannot be used for the same purpose as the PPP funds.

**IV.   FACTS SUPPORTING PROBABLE CAUSE FOR SEIZURE**

**A.   SUMMARY OF SCHEME**

16.   Beginning in or around March 2020 and continuing through at least in or around August 2020, MUSGROW and others known and unknown, knowingly submitted or caused others to submit fraudulent loan applications in the names of numerous business entities to various lenders, including federally insured financial institutions, and the SBA, and in turn received proceeds from disaster loans authorized by the CARES Act.  Among other things, the fraudulent loan applications included material misrepresentations about the applicant's payroll, payroll taxes, number of employees, and income.  Once the funds were received, in some instances, PPP loan proceeds were used as a payment to a Porsche dealership, used to make mortgage payments, and used for other payments of a personal nature in fraudulent violation of the requirements for the PPP and EIDL.

**B.   EIDL Fraud**

17.   During the period of March 2020 and continuing through August 2020, companies related to MUSGROW applied for eleven SBA EIDL loans and advances, totaling approximately $1,359,900.00.  The SBA approved four of the

EIDL applications and subsequently disbursed at least
$641,000.00.  SBA did not fund seven of the EIDL
applications for reasons that included inadequate credit
scores, duplicate applications, and failure to supply
additional required documentation.  The $641,000.00 that
SBA funded was comprised of EIDL loans and $10,000.00
advances for entities discussed below (collectively
"MUSGROW FRAUD BUSINESSES").

18.  On or about March 30, 2020, Heathrow Enterprise
submitted an application for an SBA EIDL loan in which they
provided what I believe to be false information about the
date the business opened and the gross revenue generated.

19.  On or about April 21, 2020, pursuant to the
Heathrow Enterprise EIDL application, SBA deposited an EIDL
advance of $10,000.00 into Wells Fargo Bank ("WFB")
checking account number 1439909852, held in the name of
Heathrow Enterprises DBA Chandlier's Hairdressing
("Chandlier-WFB Acct. x9852").  SBA never funded the
Heathrow Enterprises EIDL loan.

20.  On or about May 17, 2020, Hand&Hand Inc.
submitted an application for an SBA EIDL loan in which they
provided what I believe to be false information about the
operational status of the company.  I researched both
public and law enforcement databases and found no evidence

that Hand&Hand Inc. generated revenue, had expenses, had
employees, or filed or paid any federal tax.  This leads me
to believe that the company was nonoperational at the time
of the application and disqualified from receiving the
loan.

21.  On or about June 23, 2020, pursuant to the
Hand&Hand Inc. EIDL application, SBA deposited EIDL funds
of $149,900.00 into WFB account number 1440520417, held in
the name of Heathrow Enterprises ("Heathrow-WFB Acct.
x0417").  On or about July 1, 2020, SBA also deposited an
EIDL advance of $10,000.00 into Heathrow-WFB Acct. x0417.

22.  On or about May 17, 2020, Mystic Wolff LLC
submitted an application for an SBA EIDL loan in which they
provided what I believe to be false information about the
operational status of the company.  I researched both
public and law enforcement databases and found no evidence
that Mystic Wolff LLC generated revenue, had expenses, had
employees, or filed or paid any federal tax.  This leads me
to believe that the company was nonoperational at the time
of the application and disqualified from receiving the
loan.

23.  On or about June 26, 2020, pursuant to the Mystic
Wolff LLC EIDL application, SBA deposited EIDL funds of
$141,400.00 into WFB account number 3169549247, held in the

name of Heathrow Enterprises ("Heathrow-WFB Acct. x9247").
On or about July 1, 2020, SBA also deposited an EIDL
advance of $10,000.00 into Heathrow-WFB Acct. x9247.

24.  On or about July 3, 2020, Musgrow Organization
submitted an application for an SBA EIDL loan in which they
provided what I believe to be false information about the
operational status of the company.  I researched both
public and law enforcement databases and found no evidence
that Musgrow Organization generated revenue, had expenses,
had employees, or filed or paid any federal tax.  This
leads me to believe that the company was nonoperational at
the time of the application and disqualified from receiving
the loan.

25.  On or about July 7, 2020, pursuant to the Musgrow
Organization EIDL application, SBA deposited an EIDL
advance of $10,000.00 into WFB account number 2570745592,
held in the name of Forward Pace ("Forward Pace-WFB Acct.
x5592").  On or about July 24, 2020, SBA deposited EIDL
funds of $149,900.00 into Forward Pace-WFB Acct. x5592.

26.  On or about July 3, 2020, Edein LLC submitted an
application for an SBA EIDL loan in which they provided
what I believe to be false information about the
operational status of the company.  I researched both
public and law enforcement databases and found no evidence

that Edein LLC generated revenue, had expenses, had employees, or filed or paid any federal tax.  This leads me to believe that the company was nonoperational at the time of the application and disqualified from receiving the loan.

27.  On or about July 7, 2020, pursuant to the Edein LLC EIDL application, SBA deposited an EIDL advance of $10,000.00 into WFB account number 5964789662, held in the name of Forward Pace ("Forward Pace-WFB Acct. x9662").  On or about July 30, 2020, an EIDL loan of $149,900.00 was deposited into Forward Pace-WFB Acct. x9662.

28.  The following chart summarizes the EIDL loans and advance payments made to the MUSGROW FRAUD BUSINESSES:

| Tax ID | Business Name | Loan Amount | Date Funded | Principal on Loan Application |
|---|---|---|---|---|
| 83-4518515 | Hand&Hand Inc | $149,900 + $ 10,000 | 06/19/20 | Cheryl Bledsoe |
| 85-1744316 | Musgrow Organization | $149,900 + $ 10,000 | 07/22/20 | Sharon Musgrow |
| 83-1274531 | Heathrow Enterprise | $ 10,000 | 04/21/20 | Willie Musgrow |
| 85-1744483 | Edein LLC | $149,900 + $ 10,000 | 07/22/20 | Sharon Musgrow |
| 84-1860501 | Mystic Wolff LLC | $141,400 + $ 10,000 | 06/24/20 | Cheryl Bledsoe |
| | **Total** | **$641,100** | | |

29.  The MUSGROW FRAUD BUSINESSES' EIDL applications listed revenue ranging from $490,000 to $2,200,000, yet IRS databases show no annual tax returns, no quarterly tax

filings, nor any other tax filings for any of the loan applicants. Heathrow Enterprise ("Heathrow") had one Form 1099-K filed by First Data Reporting indicating that Heathrow earned $2,221 in credit/debit card transactions in November and December of 2019. Based on my training and experience, this information leads me to believe that the businesses could not have generated the revenue amounts listed on the EIDL applications and those applications are likely fraudulent. Additionally, I researched databases and did not find any IRS Forms W-2 (Wage and Tax Statement) submitted for any of the Tax ID numbers of the MUSGROW FRAUD BUSINESSES, despite the fact that each of the loan applicants stated to the SBA that it employed over ten employees. The following chart details the revenue, cost of goods sold, number of employees, and date the business opened, listed on the MUSGROW FRAUD BUSINESSES' loan applications:

| Business Name | Revenue | Cost of Goods Sold | Employees | Date of Opening |
|---|---|---|---|---|
| Hand&Hand Inc | $490,000 | $- | 12 | 04/05/2019 |
| Musgrow Organization | $1,300,000 | $920,000 | 16 | 07/03/2020 |
| Heathrow Enterprise | $875,000 | $437,500 | 11 | 10/02/2018 |
| Edein LLC | $1,300,000 | $865,000 | 18 | 04/03/2019 |
| Mystic Wolff LLC | $978,450 | $675,500 | 14 | 04/03/2019 |

| Total: | $4,943,450 | $2,898,000 | 71 | |
|--------|-----------|-----------|-----|--|

30.  In order to qualify for an EIDL loan, the affected business must have existed in an operational condition on February 1, 2020.  Based on information provided to me from other law enforcement agencies, I know that the earliest a Tax Identification Number ("EIN") with a prefix of "85" could be issued was March 23, 2020. Therefore, it is my belief that Musgrow Organization (Tax ID 85-1744316) and Edein LLC (85-1744483) did not meet the program's requirements and the applications were likely fraudulent.

31.  Each of the MUSGROW FRAUD BUSINESSES' eleven EIDL loan applications were submitted using a unique name as the principal person applying on behalf of the business entity. However, based on the following information, I believe that MUSGROW is the actual principal person applicant and orchestrator of this scheme to file fraudulent EIDL loan applications, and I believe that MUSGROW submitted the loan applications in the names of his family members.

32.  On March 1, 2021, an IRS Revenue Officer interviewed MUSGROW.  During that interview, MUSGROW admitted that Willie Musgrow ("Willie") is his father.  I searched publicly available records and obtained a marriage

certificate for Willie L. Musgrow and Sharon D. Grismore ("Sharon").  MUSGROW listed on a Citibank account application that his mother's maiden name is Grismore. Similarly, Cheryl Bledsoe is listed as the principal person application for Mystic Wolff, LLC's EIDL application. Cheryl Bledsoe's ("Cheryl") maiden name is Grismore, and the first eight digits of her Social Security Number ("SSN") are identical to Sharon's SSN, meaning that both SSNs were likely applied for at the same time, and that Sharon and Cheryl are likely closely related, perhaps sisters.

33.  MUSGROW is not listed as a principal on any of the EIDL loan applications.  However, I searched the California Secretary of State corporate filings database and found that MUSGROW is listed as an officer or principle party of interest for the MUSGROW FRAUD BUSINESSES, for example:

| Corporate Name | Date Filed | Address | Secretary of State |
|---|---|---|---|
| Heathrow Enterprise | 08/15/2018 | 175 N Palm Canyon Drive, Palm Springs, CA 92262 | CEO - Willie Musgrow; Secretary and Director - W. MUSGROW |
| Edein LLC | 04/03/2019 | 175 N Palm Canyon Drive, Palm Springs, CA 92262 | WILLIAM MUSGROW electronically signed as Organizer |
| Mystic Wolff LLC | 04/03/2019 | 175 N Palm Canyon Drive, Palm Springs, CA 92262 | WILLIAM MUSGROW electronically signed as Organizer |

| Musgrow Organization LLC | 04/03/2019 | 175 N Palm Canyon Drive, Palm Springs, CA 92262 | WILLIAM MUSGROW electronically signed as Organizer |
| Hand&Hand Inc. | 04/12/2019 | 31405 Avenida Juarez, Cathedral City, CA 92234 | WILLIAM MUSGROW listed as agent |

34.  As previously stated, EIDL funds can be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments.  A review of the bank records of each of MUSGROW FRAUD BUSINESSES shows that the EIDL funds were used for prohibited purposes:

a.  As detailed above, the loan proceeds for Hand&Hand, Inc. and Mystic Wolff LLC, were initially deposited into accounts at WFB in the name of Heathrow Enterprises.  Further, the loan proceeds for Musgrow Organization and Edein LLC were initially deposited into accounts at WFB in the name of Forward Pace.  Willie is the signer on these accounts;

b.  On or about July 30, 2020, a portion of the loan proceeds deposited into Heathrow-WFB Acct. x0417, Heathrow-WFB Acct. x9247, Forward Pace-WFB Acct. x9662 and Forward Pace-WFB Acct. x5592, were utilized to purchase four Cashier's Checks totaling $567,000.  Wells Fargo Bank provided photos that show Musgrow conducting three of the transactions.  Photos of the fourth transaction were not

provided by the bank but I believe this was also conducted by MUSGROW as the four checks are sequentially numbered. MUSGROW is not a signer on these accounts and likely withdrew the funds by claiming to be Willie.  These checks were deposited as follows:

i.   On or about July 30, 2020, a cashier's check (number 0098902656) dated July 30, 2020, containing $130,000 of EIDL loan proceeds from Heathrow-WFB Acct. x0417 was deposited into Hand&Hand-BofA Acct. x7973;

ii.  On or about July 30, 2020, a cashier's check (number 0098902658) dated July 30, 2020 containing $150,000 of EIDL loan proceeds from Forward Pace-WFB Acct. x5592 was deposited into Musgrow Org.-BofA Acct. x0227;

iii. On or about July 30, 2020, a cashier's check (number 0098902655) dated July 30, 2020 containing $137,000 of EIDL loan proceeds from Heathrow-WFB Acct. x9247 was deposited into Mystic-BofA Acct. x0586; and

iv.  On or about July 31, 2020, a cashier's check (number 0098902657) and dated July 30, 2020 containing $150,000 of EIDL loan proceeds from Forward Pace-WFB Acct. x9662 was deposited into Edein-Citibank Acct. x9840.

c.   On July 9, 2020, Hand&Hand-BofA Acct. x7973, Musgrow Org.-BofA Acct. x0227, and Mystic-BofA Acct. x0586, were all opened and bank records stated that Willie was the

account holder and Sharon was an authorized signatory.
Willie's BofA profile listed MUSGROW's phone number and
email address.  Photographs obtained from BofA show MUSGROW
and Willie depositing the three cashier's checks numbered
0098902655, 0098902656, and 0098902658 together on July 30,
2020.

     d.   On July 10, 2020 Edein-Citibank Acct. x9840, was
opened and listed Willie and Sharon as authorized
signatories.  Video obtained from Citi shows that, on July
31, 2020, MUSGROW deposited the cashier's check numbered
0098902657 (drawn on Forward Pace-WFB Acct. x9662 in the
amount of $150,000.00) into Edein-Citibank Acct. x9840.

     35.  Based on my training and experience, I believe
that MUSGROW and other known and unknown conspirators,
attempted to conceal or disguise the nature, location,
source, ownership, or control of the illegal proceeds by
utilizing cashier's checks to move the proceeds among
various bank accounts.

C.   **PPP Fraud**

     36.  On or about April 15, 2020, Heathrow Enterprise
submitted a loan application to WFB, a federally insured
financial institution, seeking a PPP loan in the amount of
$164,938.00 ("Heathrow PPP loan").  Willie was listed as
having signed for the Heathrow PPP loan.  The individuals

and salaries listed to justify the loan amount in the
application are believed to be fictitious and were used by
MUSGROW in a tax refund fraud scheme that is also under
investigation.

37.  The Heathrow PPP loan application was submitted
electronically and signed via Docusign utilizing the email
address wmusgrow@icloud.com.  MUSGROW used this same email
address when he transmitted 47 W-2 Forms to the IRS in the
above-mentioned tax refund fraud scheme.  The
wmusgrow@icloud.com email address was also listed on the
Hand&Hand Inc. EIDL application, which was submitted from
an IP address belonging to MUSGROW on or about May 17,
2020.  The SBA captures IP addresses associated with the
submission of EIDL loan applications.  Investigators used
open source websites to identify the Internet Service
Provider ("ISP") associated with the IP addresses.
Information provided by the ISPs resulted in the
identification of the IP addresses assigned to MUSGROW.

38.  On or about May 15, 2020, WFB funded the $164,938
Heathrow PPP loan with a deposit into Chandlier-WFB Acct.
X9852.  A review of the records of Chandlier-WFB Acct.
X9852 showed that in the five months following the May 15,
2020 deposit of the PPP Loan funds, MUSGROW made
potentially prohibited payments using PPP loan funds from

this account, totaling approximately $121,944.  These prohibited payments include, but may not be limited to, the following:

a.   Starting on May 15, 2020 and continuing through October 26, 2020, approximately $99,495 was transferred from Chandlier-WFB Acct. X9852 to WFB checking account number 1868757319, held in the name of Sharon Musgrow and Willie L. Musgrow ("Musgrow-WFB Acct. x7319");

b.   On or about July 7, 2020, Chandlier-WFB Acct. X9852 check number 10038 in the amount of $5,000 was issued to the automotive dealership Riverside Porsche, located in Riverside, California;

c.   On or about October 19, 2020, Chandlier-WFB Acct. X9852 check number 10045 in the amount of $5,000 was issued to Rodriquez Cabinetry, located in Palm Springs, CA;

d.   On or about October 23, 2020, Chandlier-WFB Acct. X9852 check number 10048 in the amount of $5,000 was issued to Rodriquez Cabinetry, located in Palm Springs, CA; and

e.   Two online transfers dated August 17, 2020 and October 19, 2020 of $3,724.53 each, for a total of approximately $7,449 were transferred from Chandlier-WFB Acct. X9852 to make payments on Wells Fargo Mortgage home mortgage account number 0549007326. This is a Wells Fargo

Mortgage held in the name Willie and Sharon for the property in which they currently reside.

**V.    SUMMARY OF FRAUDULENT PPP AND EIDL FUNDS TRANSFERRED TO AND AMONG THE SUBJECT ACCOUNTS**

> **A.    Fraudulent Loan Proceeds on Deposit in Hand&Hand-BofA Acct. x7973**

39.    Investigators obtained and reviewed records from BofA for Hand&Hand-BofA Acct. x7973 and learned that this account was opened on or about July 9, 2020.  The signatories on the account are Sharon Musgrow and Willie L. Musgrow.

40.    As discussed above, on or about June 23, 2020, SBA originally deposited EIDL funds of $149,900 into Heathrow-WFB Acct. x0417, for the loan applicant Hand&Hand Inc.  Also, on or about July 1, 2020, SBA deposited EIDL advance funds of $10,000 for Hand&Hand Inc. into Heathrow-WFB Acct. x0417.

41.    On or about July 30, 2020, MUSGROW drew cashier's check number 0098902656 in the amount of $130,000 against funds in Heathrow-WFB Acct. x0417. MUSGROW and Willie then deposited check #0098902656 into the Hand&Hand-BofA Acct. x7973.  These funds consisted substantially of fraudulent loan proceeds.  Prior to this deposit on July 30, 2020, the balance in Hand&Hand-BofA Acct. x7973 was $100.00.  The above referenced transactions result in a net balance of

fraudulent loan proceeds in the Hand&Hand-BofA Acct. x7973
totaling $130,000.

**B.**   **Fraudulent Loan Proceeds on Deposit in Musgrow
Org.-BofA Acct. x0227**

42.  Investigators obtained and reviewed records from
BofA for the Musgrow Org.-BofA Acct. x0227 and learned that
this account was opened on or about July 9, 2020.  The
signatories on the account are Sharon Musgrow and Willie L.
Musgrow.

43.  As discussed above, on or about July 7, 2020, SBA
deposited EIDL advance funds of $10,000 into Forward Pace-
WFB Acct. x5592, for the loan applicant Musgrow
Organiztion.  Further, on or about July 24, 2020, SBA
deposited EIDL fund into Forward Pace-WFB Acct. x5592, also
for the Musgrow Organization.

44.  On or about July 30, 2020, MUSGROW drew cashier's
check number 0098902658 in the amount of $150,000 against
funds in Forward Pace-WFB Acct. x5592.  MUSGROW and Willie
then deposited check #0098902658 into Musgrow Org.-BofA
Acct. x0227.  These funds consisted substantially of
fraudulent loan proceeds.  Prior to this deposit on July
30, 2020, the balance in Musgrow Org.-BofA Acct. x0227 was
$100.00.  The above referenced transactions resulted in a

net balance of fraudulent loan proceeds in Musgrow Org.-
BofA Acct. x0227 totaling $150,000.

C.   **Fraudulent Loan Proceeds on Deposit in Mystic-
BofA Acct. x0586**

45.   Investigators obtained and reviewed records from
BofA for the Mystic-BofA Acct. x0586 and learned that this
account was opened on or about July 9, 2020.  The
signatories on the account are Sharon Musgrow and Willie L.
Musgrow.

46.   As discussed above, on or about June 26, 2020,
SBA deposited EIDL funds of $141,400 into Heathrow-WFB
Acct. x9247, for the loan applicant Mystic Wolff LLC.
Further, on or about July 7, 2020, SBA deposited EIDL
advance funds of $10,000 into Heathrow-WFB Acct. x9247, for
Mystic Wolff LLC.  On or about July 30, 2020, cashier's
check number 0098902655 in the amount of $137,000 was drawn
against funds in Heathrow-WFB Acct. x9247, and MUSGROW and
Willie deposited this check into the Mystic-BofA Acct.
x0586.  These funds consisted substantially of fraudulent
loan proceeds.  Prior to this deposit on July 30, 2020, the
balance in the Mystic-BofA Acct. x0586 was $100.00. The
above referenced transactions resulted in a net balance of
fraudulent loan proceeds in the Mystic-BofA Acct. x0586
totaling $137,000.

D.   **Fraudulent Loan Proceeds on Deposit in Edein-Citibank Acct. x9840**

47.   Investigators obtained and reviewed records from Citi for the Edein-Citibank Acct. x9840 and learned that this account was opened on or about July 10, 2020.  The signatories on the account are Willie Musgrow and Sharon Musgrow.

48.   As discussed above, on or about July 7, 2020, SBA deposited EIDL advance funds of $10,000 into Forward Pace-WFB Acct. x9662, for the loan applicant Edein LLC . Further, on or about July 24, 2020, SBA desposited EIDL funds of $149,900 into Forward Pace-WFB Acct. x9662, for Edein LLC.  On or about July 30, 2020, MUSGROW drew cashier's check number 0098902657 in the amount of $150,000 against funds in Forward Pace-WFB Acct. x9662.  On July 31, 2020, MUSGROW deposited check #0098902657 into Edein-Citibank Acct. x9840.  These funds consisted substantially of fraudulent loan proceeds.  Prior to this deposit on July 31, 2020, the balance in Edein-Citibank Acct. x9840 was $100.00. The above referenced transactions resulted in a net balance of fraudulent loan proceeds in the Edein-Citibank Acct. x9840 totaling $150,000.

49.   In summary, the total amount of fraudulent funds to be seized from among all of the SUBJECT ACCOUNTS is $567,000.

## VI.   **CONCLUSION**

36.   The evidence set out in this affidavit demonstrates that there is probable cause to believe that from March 30, 2020 through August 14, 2020, MUSGROW and others known and unknown, knowingly submitted or caused others to submit fraudulent loan applications in the names of the MUSGROW FRAUD BUSINESSES to financial institutions and the SBA, in an attempt to obtain funds authorized by the CARES Act.  Based on the fraudulent loan applications submitted, these entities received proceeds of PPP and EIDL loans which were either directly or indirectly transferred to the SUBJECT ACCOUNTS.

37.   Based on the foregoing, there is probable cause to believe that the SUBJECT FUNDS constitute or were derived from proceeds traceable to one or more violations of 18 U.S.C. § 1343 (Wire Fraud), 18 U.S.C. § 1344 (Bank Fraud), 18 U.S.C. § 1349 (Conspiracy to Commit Wire and Bank Fraud), and 18 U.S.C. § 1014 (False Statements to a Financial Institution, and are therefore subject to seizure pursuant to 18 U.S.C. § 981(b), and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C) and 984.  In addition, there is

probable cause to believe that the SUBJECT FUNDS constitute or were derived from proceeds traceable to one or more violations of 18 U.S.C. § 1956(a) and (h) (Money Laundering and Conspiracy to Commit Money Laundering), providing a separate basis for seizure of the SUBJECT FUNDS pursuant to 18 U.S.C. § 981(b), and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) and 984.

38. In addition, the SUBJECT FUNDS are subject to seizure and forfeiture to the United States pursuant to 18 U.S.C. § 982(a)(7) and (b)(1), and 21 U.S.C. § 853(f), because there is probable cause to believe that the SUBJECT FUNDS would, in the event of conviction on the alleged underlying wire fraud, bank fraud, and money laundering offenses, be subject to criminal forfeiture, and an order under 21 U.S.C. § 853(e) (providing for restraining orders and injunctions) would not be sufficient to assure the availability of the property for forfeiture.

Mousa N. Rahib
Special Agent
IRS-Criminal Investigation